UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

**DECISION AND ORDER**
12-CR-7S

v.

RASHAN VINCENT,

Defendant.

## I.    INTRODUCTION

Pending before the Court is a motion by the Government to revoke Rashan
Vincent's ("Vincent") bail under 18 U.S.C. § 3148(b).  The motion, made orally at
Vincent's initial appearance (*see* Dkt. No. 36), follows a petition signed by the
United States Probation Office ("USPO") on February 8, 2013 charging defendant
with three violations of his bail conditions.  All three violations stem from an
incident that occurred on February 6, 2013 at 556 12th Street in Niagara Falls,
New York.  By the end of the chronology of events, Niagara Falls Police charged
Vincent under state law with possession of crack cocaine and a loaded firearm.
The Government asserts probable cause to believe that Vincent violated bail
conditions prohibiting him from committing any federal, state, or local crime; from
possessing a firearm; and from possessing any narcotic drug or other controlled
substance unless prescribed by a medical practitioner.  Vincent responds that the
evidence obtained on the night in question should be suppressed because it

originated with his girlfriend, Kaci Carr ("Carr"), who was not a subject of the search warrant that authorized the officers to enter the residence. Vincent asserts that he has automatic standing to challenge evidence and statements connected to Carr or others at the residence because the Government is attributing possession to him.

The Court held a detention and bail violation hearing on February 22, 2013 and accepted supplemental filing from the parties on March 1, 2013. For the reasons below, the Court grants the Government's motion and issues this Decision and Order pursuant to 18 U.S.C. § 3142(i).

## II.    BACKGROUND

This case generally concerns allegations that Vincent sold crack cocaine three different times in 2011. On January 5, 2012, the Government filed a three-count indictment against Vincent; each count alleges, at different times, possession of crack cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a) and 841(b). The parties have been proceeding through pretrial discovery and motion practice; the Court held a suppression hearing on December 19, 2012 and awaits post-hearing submissions, which currently are due on or before March 18, 2013.

Meanwhile, the Court has presided over detention proceedings several times during the history of this case. During the pre-indictment phase, the Court held a detention hearing on December 14, 2011 and ordered Vincent detained

2

without prejudice because bail conditions could not ensure the safety of the community. On March 30, 2012 (Dkt. No. 10), Vincent filed a motion for release from custody, citing a dismissal of Counts Two and Three of the indictment (Dkt. No. 8) as a change in circumstances that warranted release to the residence where his girlfriend, Carr, and their children lived. The Court denied that motion orally on April 5, 2012 but without prejudice to refile once Vincent could propose a suitable residence with a land line and address charges that were pending concerning passing contraband at the Niagara County Jail.[1] Vincent filed a second motion for release on April 16, 2012 (Dkt. No. 14), proposing that the Court allow him to live with his sister, Shanna Vincent, at 1536 Ashland Avenue, Niagara Falls, New York 14311. At a bail review hearing held on May 7, 2012, the Court granted the motion and set conditions of release including zero-tolerance, after warning Vincent that he had to do more than "try" to stay out of trouble given his criminal record.

This latest review of Vincent's bail resulted from events occurring on February 6, 2013 at 556 12th Street, Niagara Falls, New York.[2] That day,

---

[1] The Court rejected Vincent's request to live with Carr because both of them were charged with misdemeanor passing of contraband.

[2] Vincent's order setting conditions of release (Dkt. No. 18) designated 1536 Ashland Avenue, Niagara Falls, New York 14311 as his approved residence. The parties have not clarified why a state search warrant would issue against Vincent for the 12th Street residence, *i.e.*, they have not clarified whether Vincent simply frequented that residence, or lived there in violation of the order setting conditions of release.

Niagara Falls Police obtained a warrant to search Vincent's person, along with the premises of 556 12th Street in its entirety, for cocaine and related paraphernalia.[3]  Officers executed the warrant later in the day, finding four people inside the residence.  Officers found Victor Travis ("Travis") and April Litten in a living room on the first floor.  Officers found Vincent and Carr (along with an infant) in an upstairs bedroom and brought them downstairs.  Carr first gave her sister's name as her own before revealing her real name; she told the officers that she did so because she thought that there was a warrant outstanding for her. The mention of a warrant prompted the officers to check and to confirm that Carr did, in fact, have an unspecified outstanding warrant from the Niagara County Sheriff's Department.  At this point, officers gave Carr *Miranda* warnings and told her that she would be searched.  Before any search occurred, Carr removed a small plastic bag from her vagina and turned it over to officers, who confirmed through a field test that it contained approximately seven grams of cocaine.  Carr told officers that the bag belonged to Vincent and that he instructed her to hide the bag in her vagina.

Officers also interacted with Vincent during the execution of the search warrant.  Upon finding him, officers gave Vincent his *Miranda* warnings and asked him, "Whose dope was in your girlfriend's pants?"  Vincent replied, "I'm gonna be

---

[3] The Court has not seen any materials that supported the application for this warrant.  At no time, however, has Vincent challenged the finding of probable cause from Niagara Falls City Court that led to the issuance of the warrant.

real, that's mine." Meanwhile, officers recovered $179 in cash from under the mattress in the bedroom where they found Vincent; they also recovered a loaded handgun from a shoebox in the closet of a different upstairs bedroom. The record is not clear as to whether the bedroom from which the handgun was recovered and the bedroom where officers found Vincent and recovered the cash are the same bedroom; Vincent denies any such suggestion, and the Government has not provided any clarifying information.[4] Officers subsequently took Vincent into custody along with Carr and Travis.[5]

All of Vincent's challenges to the evidence at the hearing and through his supplemental briefing focus on the evidence that the officers obtained from Carr. Vincent first asserts that he has automatic standing to make these challenges because the cocaine found on Carr and the firearm found in the bedroom closet have been attributed to him and have formed the basis of the possession charges against him. From there, Vincent argues that the search warrant in question did not authorize a search of any person other than Vincent, and that the officers had neither probable cause nor reasonable suspicion to conduct any search of Carr. Without any reason to search Carr or to obtain statements from her, according to

---

[4] The record again is not clear as to whether Vincent had any bedroom at 566 12th Street; if so then that information might support a violation of the condition of release that he reside with his sister on Ashland Avenue.

[5] While not relevant to the pending motion, officers did find marijuana that they attributed to Travis, which is why they took him into custody also.

Vincent, his own statement claiming ownership of the cocaine found on Carr is tainted and should be suppressed as well. Vincent also asserts that the Government lacks evidence connecting him to the firearm.

The Government's response to Vincent's challenges focuses on standing. The Government leans heavily on its assertion that defendant lacks standing to challenge the evidence that the officers obtained because he had no reasonable expectation of privacy for Carr's body, where the officers found the evidence. Even if Vincent has standing, according to the Government, all of the evidence that the officers obtained resulted from Carr's voluntary conduct. Carr voluntarily inserted herself into this investigation by lying to the officers about her identity. Carr then chose to speak to the officers after receiving her *Miranda* warnings and voluntarily produced the cocaine that she was hiding. In its supplemental briefing, the Government makes no argument about Vincent's standing to challenge the firearm.

## III.    DISCUSSION

### A.    *Bail Violations Generally*

The standard for bail violations is not in dispute. "The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer . . . finds that there is . . . probable cause to believe that the person has committed a Federal, State, or local crime while on release . . . and finds that . . . based on the factors set forth in section 3142(g) of this title, there is no condition

or combination of conditions of release that will assure that the person will not

flee or pose a danger to the safety of any other person or the community; or . . .

the person is unlikely to abide by any condition or combination of conditions of

release." 18 U.S.C. § 3148(b). Additionally, "[i]f there is probable cause to

believe that, while on release, the person committed a Federal, State, or local

felony, a rebuttable presumption arises that no condition or combination of

conditions will assure that the person will not pose a danger to the safety of any

other person or the community." *Id.* "That presumption does not disappear once

the defendant has produced some rebuttal evidence, but continues to be weighed

along with other factors." *U.S. v. LaFontaine*, 210 F.3d 125, 130 (2d Cir. 2000)

(citation omitted). The Court will assess the evidence and the arguments from

the parties in this context.

**B.** ***Standing***

The Court next turns to Vincent's assertion of standing. Vincent asserts

that he "has automatic standing to challenge the search and seizure of the

aforementioned items because he is charged with possessing them." (Dkt. No.

44 at 2.) The Supreme Court, however, eliminated the concept of automatic

standing. "[D]efendants charged with crimes of possession may only claim the

benefits of the exclusionary rule if their own Fourth Amendment rights have in fact

been violated. The automatic standing rule of *Jones v. United States*, [362 U.S.

257 (1960)], is therefore overruled." *U.S. v. Salvucci*, 448 U.S. 83, 85 (1980).

7

The Supreme Court eliminated automatic standing because, since *Jones*, that court prohibited the use at trial of defendant testimony from suppression hearings, *Simmons v. U.S.*, 390 U.S. 377 (1968); and permitted the Government to take the ostensibly contradictory position that a given defendant possessed items seized for purposes of criminal liability but lacked standing to challenge the seizure for purposes of the exclusionary rule, *Rakas v. Illinois*, 439 U.S. 128 (1978).

Without automatic standing, and assuming for this analysis that Carr's vagina was "searched" despite evidence of voluntary production of the plastic bag, Vincent could have standing to challenge the drug evidence only by asserting that he had a legitimate expectation of privacy in Carr's vagina. *See Salvucci*, 448 U.S. at 92 ("We simply decline to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched."). Putting aside the hopefully self-evident oddness of such an argument, Vincent has cited no authority to support it; in contrast, case law suggests otherwise. *See U.S. v. Brown*, 743 F.2d 1505, 1507 (11th Cir. 1984) ("It may well be that Brown had a subjective expectation of privacy in Manikowski's person, but that alone is not enough to trigger the protections of the fourth amendment—the defendant's subjective expectation must also be one that society is prepared to recognize as reasonable.") (internal quotation marks and citation omitted); *U.S. v. Herbst*, 641 F.2d 1161 (5th Cir.

8

1981) (defendants lacked standing to challenge constitutionality of a body search of co-defendant because they lacked legitimate expectation of privacy in his body or in the cocaine found thereon); *U.S. v. York*, 578 F.2d 1036, 1041 (5th Cir. 1978) ("Stephen has no standing to object to the search of James' body for there surely can be no reasonable expectation by Stephen of privacy in his sibling's body cavities."); *U.S. v. Walker*, No. 6:06-111-DCR, 2007 WL 1973971, at *3 (E.D. Ky. July 3, 2007) ("Walker did not have a legitimate expectation of privacy in Wallace's 'groin area,' regardless of his ownership of the house.  As a result, the Court finds that Walker has no legitimate expectation of privacy to challenge the admissibility of the eight grams of crack cocaine in this case.") (citations omitted).

Without automatic standing, Vincent also cannot challenge the firearm evidence unless he could establish a legitimate expectation of privacy in the area where the officers found it.  The only information that Vincent has asserted regarding the firearm is that it is not his and that it was found in Travis's bedroom closet.  Vincent has not asserted any privacy interest in that closet.  The Court thus finds that Vincent lacks standing to challenge the firearm evidence.

Upon reviewing Vincent's arguments, therefore, the Court finds that Vincent lacks standing to challenge any of the evidence that the officers obtained when they executed the search warrant.

**C.      *Probable Cause***

In the alternative, even if Vincent somehow did have standing to challenge all of the evidence that the officers obtained when they executed the search warrant, the evidence properly supports a finding of probable cause.  The officers focused on Carr only when she lied about her identity and volunteered that she might have an outstanding warrant against her.  Once the officers confirmed the existence of an outstanding warrant, they had probable cause to arrest her and to search her.  *Cf. U.S. v. Miller*, 382 F. Supp. 2d 350, 368–69 (N.D.N.Y. 2005) ("Numerous courts in this Circuit have adopted the proposition that probable cause to arrest exists on the basis of a computer hit where there is no evidence that the information contained in the computer was false or invalid.") (citations omitted).  The officers gave Carr her *Miranda* warnings accordingly.  A search never happened, but Carr was properly advised of her rights before she began making statements and before she produced the plastic bag.  When that evidence shifted attention to Vincent, the officers properly gave him his *Miranda* warnings.  Vincent claimed ownership of the plastic bag and its contents only after receiving the *Miranda* warnings.  That evidence together creates more than a fair probability that Vincent possessed cocaine in violation of federal and state law as well as his conditions of release.  The Court thus finds probable cause of a bail violation on the basis of the drug evidence alone.

The evidence regarding the firearm is a different matter. Although Vincent's bail will be revoked on the strength of the drug evidence, the Court will note for the record that there is no evidence connecting the firearm to Vincent. Officers found the firearm in someone else's bedroom closet. There is no evidence that Vincent purchased, used, or otherwise possessed the firearm. The search warrant in question authorized the officers to enter the bedroom closet, but without more information, the Court does not know whose firearm it is. The Court thus dismisses Count Two from the violation petition for a lack of probable cause.

In sum, the Court finds probable cause to believe that Vincent committed a federal and state felony while on bail, which also triggers the presumption that no condition or combination of conditions will assure that he will not pose a danger to the safety of any other person or the community. Vincent has offered no affirmative information to counter this presumption. The presumption adds to the factors set forth in 18 U.S.C. § 3142(g), which weigh against Vincent. Vincent faces serious drug charges in this case, has a significant criminal history as the Court noted in his original detention hearing, and has faced allegations of continued drug activity twice now—once when he was accused of passing contraband while at the Niagara County Jail and once under the present situation. Under these circumstances, the Court has decided that detention is appropriate.

## IV. CONCLUSION

For all of the foregoing reasons, the Court finds probable cause that Vincent possessed cocaine in violation of his conditions of release and affirms Counts One and Three of the violation petition.  Accordingly, the Court grants the Government's motion and hereby revokes Vincent's bail.

Vincent shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

Despite the Court's order of detention, Vincent shall be afforded reasonable opportunity for private consultation with counsel.  Additionally, on order of the Court or on request of an attorney for the Government, the person in charge of the corrections facility in which defendant is confined shall deliver Vincent to a United States Marshal for the purpose of an appearance in connection with a court proceeding in this case.

In accordance with 18 U.S.C. § 3142(j), nothing in this Decision and Order shall be construed as modifying or limiting the presumption of innocence.

SO ORDERED.

___/s Hugh B. Scott_____
HONORABLE HUGH B. SCOTT
UNITED STATES MAGISTRATE JUDGE

DATED: March 11, 2013